(90 South. 910)

ROWLAND et al. v. HESTER.    (7 Div. 209.)

(Supreme Court of Alabama.    Oct. 20, 1921.)

I. Deeds ⊸70(8) — Grantee's assurances of sale for grantor at agreed price held fraudulent.

Where grantee occupies a confidential relation to grantor and induces the conveyance by promises, which he intended to break, that he will sell the land for grantor at a given sum per acre, and subsequently sells it for less, he commits such fraud as will authorize equity to cancel the deed to him and his deeds to subsequent purchasers with knowledge of the fraud or in collusion.

2. Cancellation of instruments ⊸37(6)—Bill to cancel deeds held sufficient without allegation of actual participation or knowledge of fraud by conspirator.

In a suit to set aside deeds to complainant's sales agent and from him to others on the ground of fraud and collusion, a bill charging that all defendants conspired to acquire the land for less than its value, and that a deed was to be procured by the sales agent as agent of the others, who were to acquire the land, held sufficient, though it did not charge actual participation in or knowledge of the fraud by the latter, they being charged with constructive notice of their agent's acts in procuring the deed.

3. Cancellation of instruments ⊸41—Bill to cancel deeds held not demurrable for generality.

In a suit to cancel deeds on the ground of fraud and conspiracy, a bill alleging that defendant, occupying a confidential relation to complainant, induced her to deed him the land to handle as her sales agent, and assured her that he would sell it for a given sum per acre, while intending to sell it for less, which he subsequently did, etc., held not subject to demurrer for generality.

4. Cancellation of instruments ⊸24(2)—Vendor must show offer to restore status quo or excuse for failure.

To disaffirm a deed in equity as well as at law, vendor must show an offer to restore the status quo or a lawful excuse for failure.

5. Cancellation of instruments ⊸37(4)—Vendor must aver willingness and readiness to restore if vendee rejects offer.

To cancel a deed in equity, vendor must aver a willingness and readiness to restore the status quo, if vendee rejects his offer to restore.

6. Cancellation of instruments ⊸24(2)—Purchase money need not be deposited in court with bill.

A bill to cancel a deed need not be accompanied by a deposit in court of the money or thing received by vendor, as equity may require restoration as a condition to the relief sought.

7. Cancellation of instruments ⊸37(4) — Grantor need not aver offer to return amount paid mortgagee by grantee.

In a suit to cancel a deed, complainant need not aver an offer to restore the amount paid by grantee to satisfy a mortgage.

8. Cancellation of instruments ⊸37(4)—Bill must offer to restore money received as condition to relief.

In a suit to cancel a deed for fraud, a bill which does not offer to restore all money received by complainant as a condition to relief is defective, though it sufficiently avers an offer to restore before filing the bill.

9. Cancellation of instruments ⊸41 — Bill held sufficient against demurrer for failure to allege tender to court.

In a suit to cancel deeds, a bill which sufficiently averred an offer to restore before filing

was not subject to demurrer on the ground that it failed to allege a sufficient or legal tender to the court, though it did not offer to restore all money received as a condition to relief.

Appeal from Circuit Court, Clay County; W. L. Longshore, Judge.

Suit by A. E. Hester against R. G. Rowland and others. From a decree overruling demurrers to the bill, respondents appeal. Affirmed.

The bill is as follows (omitting the description of the parties):

(2) That J. W. Hester is a son of oratrix. Your oratrix is about 80 years of age, and is at the present time, and was on the 14th of January, 1919, very feeble, physically and mentally, illiterate, and without business experience, and insufficient education to write her name.

(3) That R. G. Rowland is a lawyer and has been engaged in the practice of the law for a long time at Ashland, Ala.; that your oratrix inherited the following described real estate from her husband, which is set aside to oratrix as a homestead, to wit: The south half of the northeast quarter of section 35, and the northwest quarter of the northwest quarter of section 36, all in township 19, range 8. When the husband of your oratrix died, this was all the land he owned at the time of his death, and oratrix employed the firm of Rowland & Gay, R. G. Rowland and E. P. Gay, to have the same set aside to your oratrix as a homestead, and the same was set aside in the probate court of Clay county, and through this employment the said R. G. Rowland obtained the confidence of your oratrix, and some time in October or November, 1918, your oratrix desired to borrow $100 to pay her current expenses, and oratrix, having had the services of said R. G. Rowland in setting aside said lands to your oratrix as a homestead, consulted said Rowland about borrowing the $100 or securing his services to borrow the $100 for oratrix. The said R. G. Rowland induced your oratrix to borrow $300 and to give a mortgage on said 120 acres of land which oratrix owned to secure the payment of said money, and oratrix did borrow the $300 from a bank in Lineville, Ala., on or about the 7th day of November, 1918, and shortly after your oratrix gave said mortgage and secured loan said Rowland began to try to scare your oratrix and to frighten her with said mortgage, and to make her believe that she was in danger of losing her land under said mortgage, and to induce her to sell her place, and did persuade your oratrix to agree to sell said place and to employ him to sell the same, and oratrix did employ him to sell said place at and for the sum of $35 per acre.

(4) Your oratrix further states, charges, and avers that the relations between your oratrix and her son, J. W. Hester, were not good at all, and the said Rowland, while he was employed by your oratrix, and oratrix thought and believed all the time that he was acting in good faith for and in behalf as her attorney, as a matter of fact was in collusion with the said J. W. Hester and Henry Bartlett to secure said lands from your oratrix for much less than their real value. Your oratrix is advised, and therefore states as a fact, that the said Row-

land, J. W. Hester, and Henry Bartlett, in furtherance of their conspiracy to secure from your oratrix said lands at a less price than the same was worth, and at a less price than your oratrix was willing to sell the same, that the said Rowland would get a deed from your oratrix to said lands to himself, and that he would reconvey to the said Hester and the said Bartlett said lands or a portion of them to the said Hester and another portion to the said Bartlett, the particular part which he would convey to each being unknown to your oratrix, and, pursuant to this fraudulent scheme, the said Rowland approached your oratrix and represented to her that he could sell the land for $35 per acre, which your oratrix asked for the same, and which the same was reasonably worth, but that before he could do so your oratrix would have to give him a deed, and on, to wit, the 14th day of January, 1919, the said Rowland procured a deed from your oratrix to said lands, a substantial copy of which is hereto attached, marked Exhibit A, and made a part hereof as if written herein. It was agreed by and between said Rowland, J. W. Hester, and said Bartlett that they would furnish said Rowland the money, to wit, the sum of $3,000, and they did furnish said Rowland said money, and he conveyed to each of them a portion of said land, but the deeds conveying the same are not on record, and your oratrix is unable to state what portion of said lands he conveyed to each of them, but this arrangement and agreement was all made and entered into between said Rowland and said Bartlett and said J. W. Hester before your oratrix made this deed to the said Rowland, none of which was known to your oratrix at the time she was making this deed to the said Rowland; and after procuring the deed from your oratrix, either the same day or the next day, said Rowland procured the money from the said Hester and the said Bartlett, to wit, the sum of $3,000, and put $2,550 of it in the Citizens' National Bank of Lineville to the credit of your oratrix or the daughter of your oratrix, one or the other— your oratrix is not advised as to which it was, whether to the credit of your oratrix or the daughter of your oratrix—and took up the said mortgage to said bank for said $300, on said land, and the said Rowland kept the other $450. Your oratrix thought, when she was signing said deed, and verily believed, that she was getting $35 an acre for her land, but the same day she signed said deed, or the next morning, when she found out the money was deposited in the bank, and her daughter figured it out and showed her what it came to, she ascertained that a fraud had been practiced on her, and that she was not getting $35 an acre for her land, and that the entire business was a fraudulent scheme of the said Rowland and said Hester and said Bartlett to get her land for much less than its real value, and for said sum of $2,550, the said Rowland securing $450 profit in said fraudulent transaction and the said Bartlett and Hester getting said lands for more than $1,000 less than its worth or its real value. As soon as your oratrix ascertained that such fraud had been practiced on her, she tendered back all the money she had received, to wit, the sum of $2,250, and procured the consent of said bank to take back said mortgage, and demanded back from the said Row-

land, the said Hester, and the said Bartlett a conveyance to her of said lands on the payment to them of said money which oratrix had received from said transaction, and offered them a deed, properly prepared, for them to convey back to your oratrix said lands, and demanded that they convey the same back, and your oratrix notified them that she rescinded said transaction on account of said fraud, and they refused to convey back to your oratrix said lands, and oratrix is informed and believes, and therefore states as a fact, that the said J. W. Hester, Henry A. Bartlett, and R. G. Rowland intended to hold said land and thereby defraud your oratrix out of about $1,600 unless your oratrix invokes the aid and jurisdiction of this court to prevent the perpetration of said fraud.

(5) Your oratrix further states, charges, and avers that during all of these transactions the said Rowland was employed by her as her attorney, and she had unlimited faith and confidence in him, and relied implicitly on what he said, and she had no knowledge or information at or prior to the time she made said deed to him that he was in collusion with Henry A. Bartlett and J. W. Hester to secure said lands from her at a price less than she was willing to sell the same for, and she had no notice or knowledge that the said Rowland was betraying her confidence in procuring said deed for the fraudulent purpose or reconveying the land to said Bartlett and Hester and keeping $450 of the proceeds himself, and defrauding your oratrix out of said lands at a fraction over $21 an acre, when he knew that your oratrix was not willing to sell the same less than $35 per acre, and the said Rowland fraudulently withheld from your oratrix the fact, at the time he procured your oratrix's signature to said deed, that he had already agreed to let said Bartlett and said J. W. Hester have said lands at and for the sum of $3,000 or for any other sum. Your oratrix further states, charges, and avers that she is in possession of said lands, and that she is ready, willing, and able to refund to the said R. G. Rowland, J. W. Hester, and Henry A. Bartlett, or whichever may be found to be entitled to the same, said $2,250 which was deposited in said bank, as well as said bank which held said mortgage for $300 is ready, willing, and able to take back said mortgage and refund the money which the respondents paid to take up the same, and your oratrix submits herself to the jurisdiction of this court to do and perform all the things in connection therewith which this court may, in equity and good conscience, require of complainant to do and perform.

The following demurrers were interposed:

(1) No fraud is alleged in the alleged efforts of respondent R. G. Rowland to induce complainant to sell her land.

(2) For aught that appears, the land was not worth $35 per acre.

(3) It is not alleged what the respondents J. W. Hester and Henry A. Bartlett had to do with the collusion alleged.

(4) It is not averred that respondents J. W. Hester and H. A. Bartlett induced said R. G. Rowland to get the alleged deed from complainant to himself and reconvey to the other respondents, J. W. Hester and H. A. Bartlett.

(5) It is not alleged or averred that the respondents or either of them told complainant that she was selling her land to R. G. Rowland for $35 per acre.

(6) As to what the complainant thought she was getting for her land is immaterial, and the statement as to same is a conclusion of the pleader.

(7) No sufficient or legal tender of the purchase money is alleged.

(8) The allegation that complainant tendered back all the money she received, to wit, $2,250, is not a sufficient tender in law or equity.

E. J. Garrison and Lackey & Glass, all of Ashland, for appellants.

Demurrers Nos. 1 to 6, inclusive, should have been sustained. 195 Ala. 501, 70 South. 143; 58 Ala. 627; 194 Ala. 469, 69 South. 934; 68 Ala. 80; 69 Ala. 40; 76 Ala. 347; 176 Ala. 99, 57 South. 763. The offer of tender was not sufficient. 90 Ala. 308, 8 South. 157; (Ala.) 31 South. 110; 21 Ala. 782; 195 Ala. 505, 70 South. 143; 38 Cyc. 137.

E. P. Gay, Riddle & Hardegree, and John J. Pruet, all of Ashland, for appellee.

Brief of counsel did not reach the Reporter.

ANDERSON, C. J. [1, 2] The bill of complaint seeks to cancel or set aside a certain deed from the complainant to Rowland as well as a deed, or deeds, from Rowland to Bartlett and Hester, jointly or severally, upon the theory that Rowland procured the deed to himself through fraud and with the knowledge of or through a collusion with other respondents. If Rowland, occupying a confidential relation to the complainant, induced her to deed him the land for the purpose of handling same as her sales agent, and at the time, as charged in the bill, assured her that he could and would sell the land for her for $35 per acre and at the time intended to sell it for less, and which he subsequently did, this would constitute such a fraud upon the complainant as would authorize a court of equity to cancel said deed as between Rowland and complainant as well as to the other two respondents if they had knowledge of the fraud practiced upon complainant by Rowland or were in collusion with him throughout. While the bill does not charge an actual participation or knowledge of the alleged fraud of Rowland to Bartlett and Hester, it does charge that all of them entered into a conspiracy to acquire the land for less than its value, and that a deed to same was to be procured by Rowland, who was, in effect, the agent of Bartlett and Hester, who were to and who did acquire the land. They were therefore chargeable with constructive notice of the acts and conduct of said Rowland in and about procuring the deed from the complainant.

[3] The bill fully and sufficiently sets out

the facts constituting the fraud charged, and was not subject to the demurrer for generality.

[4-6] It is, of course, well settled that he who would disaffirm a sale in equity, as well as at law, must show an offer to restore the status quo; that is, must offer to restore whatever he may have received under said sale, or show a lawful excuse for not doing so. If the offer to restore is rejected by the vendee, and the party seeks to cancel the sale in a court of equity, it is essential to the equity of the bill to aver a willingness and readiness to restore the same as a condition precedent to relief. It is not essential, however, to the equity of the bill that the same be accompanied by a deposit of the money or thing into court, as a court of equity can require the restoration as a condition to the relief sought. McCalley v. Otey, 90 Ala. 307, 8 South. 157; Wittmeier v. Tidwell, 147 Ala. 354, 40 South. 963.

[7] The present bill charges that the complainant offered to refund all the money received by her from Rowland. It does not aver an offer to restore the $300 paid to her mortgagee by Rowland but that she returned the mortgage and repudiated the payment of same upon a discovery of the alleged fraud, and, not having received the said $300, it was not incumbent upon her to have offered to return the same.

[8, 9] While the bill sufficiently avers an offer to restore before the filing of same, it does not offer to do equity by offering to restore all money received by complainant as a condition to relief, and is therefore defective as against an appropriate demurrer. It is not, however, subject to ground 7 of the demurrer, the only one which attempts to raise this question, as there was a sufficient offer to restore before the bill was filed, and, as above stated, the same did not have to be tendered to the court.

The decree of the circuit court is affirmed. Affirmed.

SAYRE, GARDNER, and MILLER, JJ., concur.